■ In the Matter of THOMAS FORMAN, Respondent, v NEW YORK CITY HOUSING AUTHORITY, Appellant.

Ross, J. P., and Kassal, J., dissent in a memorandum by Ross, J. P., as follows: We would reverse Special Term and reinstate the determination of respondent New York City Housing Authority (NYCHA), which terminated the tenancy of Thomas Forman (petitioner) for nondesirability.

The petitioner is 43 years old, and since 1974 has lived alone in a 3½-room apartment on the fourth floor in the Robert Fulton Houses (Fulton Houses), which are located at 418 West 17th Street, Manhattan. The Fulton Houses are a Federally aided public housing project that is owned and operated by NYCHA, and a total of 944 families reside in the several buildings that comprise it. In the particular 25-floor high-rise building where petitioner's apartment is located, 219 other families reside, and these families are made up of individuals of all ages, ranging from infants to senior citizens.

On or about June 11, 1982, NYCHA commenced an administrative proceeding against the petitioner, which charged that his continued occupancy at the subject premises constituted a danger to his neighbors and to the project. Specifically, the Authority charged the following:

"1. On or about June 1, 1982, you, THOMAS FORMAN, and/or guests in your apartment did unlawfully and/or negligently start a fire in your project apartment, and/or, you, THOMAS FORMAN did unlawfully and/or negligently permit a fire to be started, in your project apartment causing damage to Housing Authority property.

"2. On or about April 1, 1982, you, THOMAS FORMAN, did unlawfully and/or negligently start a fire in your project apartment, and/or, you, THOMAS FORMAN, did unlawfully and/or negligently permit a fire to be started in your project apartment, causing damage to the apartment.

"3. On or about January 11, 1981, you, THOMAS FORMAN, did unlawfully and/or negligently allow food on your stove to create a smoke condition in your project apartment and hallway late at night.

"4. On or about July 2, 1976, you, THOMAS FORMAN, did unlawfully and/or negligently start a fire in your project apartment causing smoke damage and water damage to the apartment and the hallway of your project building."

Subsequent to petitioner being served with these written charges, a hearing was held. At this hearing, the petitioner was represented by counsel, who cross-examined witnesses, and the petitioner himself testified. The Authority's case against petitioner, in substance, consisted of evidence concerning the first three charges. The NYCHA presented no evidence as to charge No. 4 and, therefore, at the conclusion of the presentation of the NYCHA's case, the hearing officer granted petitioner's motion to dismiss this charge.

Summarized herein are the significant portions of the NYCHA's case against petitioner. First, in support of charge No. 1, concerning the fire of June 1, 1982, New York City Police Sergeant William P. McGuire (McGuire) testified that he was summoned to investigate a fire at the petitioner's apartment on that date; that he arrived at 4:35 A.M., and observed fire and smoke damage, which, in substance, had completely devastated the entire apartment, except for the bedroom; that McGuire then interviewed the petitioner, who told McGuire that earlier in that evening he was entertaining a friend; that the petitioner and his friend were joined by two neighbors; that the four of them drank and watched television in the living room for a period of time; that then petitioner and his friend excused themselves and went to sleep in the bedroom; that when they awoke sometime later and opened the bedroom door, they found the apartment smoke-filled; that the Fire Department thereafter arrived; and, that McGuire subsequently went to St. Vincent's Hospital where the two guests had been taken and that the condition of these guests was so extremely critical that they could not be interviewed. Another witness who testified in support of NYCHA's case concerning the June 1, 1982 fire was Fire Marshal Philip Meagher (Meagher), who testified that he was sent to investigate the June 1, 1982 fire at 4:30 A.M.; that he

observed empty wine and beer bottles; that the petitioner appeared disoriented; and that in Meagher's expert opinion the fire on June 1, 1982 originated in the living room couch from careless smoking.

Second, in support of charge No. 2, concerning the fire of April 1, 1982, New York City Housing Authority Police Officer James Williams (Williams) testified that he was summoned to investigate a fire in the petitioner's apartment on April 1, 1982; that when he arrived at 4:15 P.M., he found extensive fire and water damage; that in Williams' opinion "the place was in shambles"; and, that he interviewed the petitioner and the petitioner told him "I left a lit cigarette burning".

Third, in support of charge No. 3, concerning the fire of January 11, 1981, New York City Housing Authority Police Officer William Kali (Kali) testified that he was called upon to investigate a fire in petitioner's apartment on January 11, 1981; that he arrived at 12:55 A.M. to find the Fire Department already on the scene; that Officer Kali observed smoke in the apartment and fourth-floor corridor; and, that he interviewed the petitioner, who said to him that food had been left cooking on the stove and had burned.

In response to the NYCHA's case, the petitioner testified in his own behalf. The petitioner's testimony, in pertinent part, was as follows: that he has lived alone in this apartment since 1974; that his account of the fires of January 11, 1981, April 1, 1982 and June 1, 1982 was substantially in accord with the testimony given by the NYCHA witnesses; that he admitted telling Officer Williams that he caused the April 1, 1982 fire by carelessness with a cigarette; that, in respect to the circumstances concerning the April 1, 1982 fire, petitioner stated that he met someone on a bus coming to New York City and he invited that person back to his apartment, and that then petitioner left for an hour to go on an errand and when he returned to the apartment he found it on fire with his new "friend" attempting to extinguish this blaze; that further this friend, whose name petitioner did not recall, had just finished a "six-pack of beer"; that petitioner then told this person to leave; that for some unknown reason the petitioner told the firemen and the police that petitioner caused the fire; and, that, furthermore, as to the fires that occurred on January 11, 1981 and June 1, 1982, since those fires were caused either by simple carelessness or by an accident of a guest, they should not be held against petitioner.

After receiving all of the evidence, the hearing officer made his report and recommendation. In pertinent part, he found that

each one of the three fires, mentioned *supra,* was attributed by the NYCHA witnesses to active or passive carelessness and that none was deemed incendiary or reckless; that the petitioner, during his testimony, admitted to being a chronic alcoholic who *still* drinks, and that the petitioner suffers and is disabled by a severe spinal injury; that nothing shows the petitioner to be other than a pleasant, honest and gentle man; that petitioner suffers certain illnesses and should be given assistance, not punishment; that "[n]onetheless, on the record before [the hearing officer], the nature of [the petitioner's] particular non-desirability is so grave, there is no way I can mitigate the Authority's recommendation of termination. Because of his drinking, [petitioner] has become a frank threat to his neighbors' peace and safety"; that petitioner remains an active alcoholic and has been involved in three episodes with the Fire Department; that evidence was produced "that on January 11, 1981, [petitioner] did himself negligently create a condition which resulted in the arrival of the Fire Department; and [that the petitioner did] negligently, on April 1, 1982 cause a fire with a lit cigarette". As mentioned *supra,* the hearing officer recommended termination of the petitioner's tenancy for nondesirability. Thereafter, the NYCHA approved that recommendation.

The petitioner commenced a CPLR article 78 proceeding to challenge the respondent NYCHA's termination of his tenancy, in that he claimed that the NYCHA had acted arbitrarily and capriciously.

Special Term, after conceding in its opinion that, "Petitioner at all times readily admitted that his carelessness was a partial cause of * * * two fires", concluded that

"[n]one of these incidents suggest to the court a pattern of undesirable or dangerously negligent conduct on the part of petitioner as would warrant his eviction * * *

"Given those findings, together with petitioner's patent remorse, his limited financial resources, his physical disabilities and alcohol dependence (for which he is seeking treatment) and the improbability of his finding other living accommodations if evicted, termination of his tenancy seems particularly inappropriate in this case". Thus, Special Term granted the petition to the extent that respondent NYCHA's termination of the petitioner's tenancy was vacated and this matter remanded to respondent NYCHA for further consideration as to an appropriate disposition.

I disagree with Special Term. Based upon the evidence adduced in this full and fair hearing, in which the petitioner was represented by counsel and received every opportunity to present his side of the events, the respondent NYCHA presented

substantial evidence to support the findings of the hearing officer, and his recommendation of termination of tenancy does not shock the conscience (*Matter of Pell v Board of Educ.*, 34 NY2d 222 [1974]). Petitioner is characterized by the hearing officer as a clear and present danger. This is particularly pertinent since 219 families live in the same building. I can sympathize, as much as Special Term does, with the petitioner's plight in having to find new housing in a city in which housing for the poor is very scarce or nonexistent. However, I do not think that we can blind ourselves to the fact that, by the overwhelming evidence, the petitioner has been proven to be an unfit tenant. Frankly, in my opinion, Special Term failed to properly consider in its determination the mandate of the respondent NYCHA to protect the dwelling place of its tenants. Special Term's abuse of discretion, in the instant case, is especially egregious since it fails to consider the safety and well-being of 219 other families in the building.

Accordingly, we would reverse the order and judgment (one paper), Supreme Court, New York County (Margaret Taylor, J.), entered December 2, 1983, in this article 78 proceeding and reinstate and confirm the determination of respondent NYCHA, which terminated petitioner's tenancy in the Fulton Houses, and dismiss the petition.